IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMAR MCMILLIAN<br><br>    *Plaintiff*,<br><br>v.<br><br>BRIAN DOUGLAS,<br><br>    *Defendant*. | CIVIL ACTION<br>NO. 16-00094 |

**PAPPERT, J.**                                                                                              **JUNE 13, 2016**

## MEMORANDUM

  Jamar McMillian ("McMillian") sued Folcroft Township Police Officer Brian Douglas ("Douglas") over injuries McMillian allegedly sustained when Douglas arrested him on November 19, 2014. McMillian contends that Douglas tasered and verbally assaulted him and severely injured his finger in violation of the constitutional rights guaranteed to him by the Fourth and Fourteenth Amendments. He also asserts state law claims for assault, battery, false arrest, false imprisonment and malicious prosecution.

  Before the Court is Douglas's motion to dismiss McMillian's Fourteenth Amendment and common law false arrest, false imprisonment and malicious prosecution claims. He also seeks to dismiss McMillian's official capacity claims and any claim for injunctive relief. The Court grants the motion.

### I.

  On November 19, 2014 Douglas saw McMillian's car double-parked, facing the opposite direction of traffic on Elmwood Avenue in Folcroft Township, Delaware County. (Am. Compl. ¶¶ 6, 8, ECF No. 7.) While McMillian sat in his car, Douglas issued a parking ticket and placed

1

it on the car.  (*Id.* ¶ 10.)  After McMillian and Douglas argued about the citation, Douglas informed McMillian that he was under arrest.  (*Id.* ¶ 10.)  The two then argued about the grounds for placing McMillian under arrest.  (*Id.* ¶¶ 10–11.)  At some point during the argument, Douglas used his Taser gun on McMillian, handcuffed him and "verbally assault[ed] him."  (*Id.* ¶¶ 12–14.)  While McMillian was handcuffed and against a police car, Douglas bent McMillian's right pinkie finger back, snapping the tendon.  (*Id.* ¶ 15.)

McMillian was taken into custody and charged with recklessly endangering another person, terroristic threats, resisting arrest, disorderly conduct, reckless driving, careless driving and improper stop.  (*Id.* ¶ 16.)  McMillian remained in custody until December 3, 2014 after failing to post bail.  He sought medical treatment for the injury to his finger on December 8 at Mercy Fitzgerald Hospital.  (*Id.* ¶ 20.)

Douglas failed to appear at McMillian's preliminary hearings on November 26, December 3 and December 17, 2014.  (*Id.* ¶ 18.)  On December 17 all charges against McMillian were dismissed.  (*Id.* ¶ 19.)  On January 6, 2015 the Commonwealth re-filed the complaint against McMillian.  (*Id.* ¶ 21.)  Douglas again failed to appear at McMillian's preliminary hearings on March 25, April 8 and April 29, 2015, and all charges against him were again dismissed.  (*Id.* ¶ 22–23.)

McMillian filed this lawsuit against Douglas on January 11, 2016.  (ECF No. 1.)  On February 8, 2016 McMillian filed an amended complaint, alleging claims against Douglas "individually and in his official capacity" under: (1) 42 U.S.C. § 1983 ("Section 1983") for excessive force in violation of the Fourth and Fourteenth Amendments; and (2) Pennsylvania state law for assault, battery, false imprisonment, false arrest and malicious prosecution.  (Am.

Compl. ¶¶ 30–46.) In addition to compensatory and punitive damages, McMillian seeks an unspecified form of injunctive relief. (*Id.* ¶¶ 34, 37, 40, 43, 46.)

On February 12, 2016 Douglas filed a motion to dismiss the Section 1983 Fourteenth Amendment claim and the false arrest, false imprisonment and malicious prosecution claims, though he does not oppose giving McMillian leave to amend the state law claims. (Def.'s Mot. to Dismiss at 4–10, ECF No. 8.) Douglas also seeks the dismissal of all official capacity claims and any claim for injunctive relief. (*Id.* at 4–6.) Douglas does not seek the dismissal of McMillian's Fourth Amendment claim and state law assault and battery claims. (*Id.* at 8.)

In response, McMillian contends that dismissal of his Fourteenth Amendment claim is premature because discovery is necessary to determine if the injury to his finger occurred in the process of his arrest or sometime thereafter. (Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") at 7–8, ECF No. 9.) According to McMillian, that determination dictates whether his claim arises under the Due Process Clause of the Fourteenth Amendment or the Fourth Amendment's prohibition against excessive force. (*Id.*) He also argues that he has adequately pled malicious prosecution and false imprisonment claims because the facts in the amended complaint are sufficient to demonstrate that Douglas did not have probable cause to arrest him.[1] (*Id.* at 4–7.) The Court heard oral argument on the motion on June 8, 2016. (ECF No. 12.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough.

---

[1] McMillian uses "false arrest" and "false imprisonment" interchangeably in his amended complaint. (Am. Compl. Count IV ¶¶ 41–43.) Under Pennsylvania law, false arrest and false imprisonment "are essentially the same actions." *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 365 (E.D. Pa. 2006).

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The court must construe the complaint in the light most favorable to the plaintiff.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted).  A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).

Under *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  *See Connelly*, 809 F.3d at 787.  First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim."  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### III.

Douglas contends that McMillian's Fourteenth Amendment due process claim should be dismissed because "it is subsumed by the Fourth Amendment claim."  (Def.'s Mot. to Dismiss at 4.)  Specifically, he argues that the Fourth Amendment's protection against excessive force during an arrest is the "proper" and "more specific" claim for relief based on the alleged facts.  (*Id.*)  He asks the Court to dismiss McMillian's due process claim because such claims apply to pretrial detainees, not arrestees.  (*Id.*)  McMillian agrees that claims for excessive force during an arrest are brought pursuant to the Fourth rather than the Fourteenth Amendment.  (Pl.'s Opp. at 8.)  He contends, however, that his custodial status at the time of his injury was "unclear."  (*Id.*)

He argues that the "issue would be better resolved [ ] after both sides have had an opportunity to conduct discovery and learn [McMillian's] exact custodial status." (*Id.*)

In *Graham v. Connor*, 490 U.S. 386, 395 (1989), the Supreme Court of the United States held that the Fourth Amendment governs all claims of excessive force during an arrest. *See also Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) ("[W]e note that excessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process.") (citation omitted). In *Graham*, plaintiff was a diabetic who was suffering from an insulin reaction at a convenience store. *Graham*, 490 U.S. at 388–89. After a police officer noticed Graham's erratic behavior as he was getting into a car, he made an investigative stop. *Id.* During the stop Graham stepped out of his car, ran around it twice, sat down on the curb and lost consciousness. *Id.* After officers placed Graham on the hood of his car and handcuffed him, he regained consciousness. *Id.* Though Graham attempted to explain his behavior, the officers shoved Graham's face into the hood of the car and then threw him headfirst into the police car. *Id.* He later sued the police officers for violating his Fourteenth Amendment due process rights. *Id.* at 390.

After the district court and Fourth Circuit Court of Appeals held that Graham's claims were properly analyzed under the Fourteenth Amendment, the Supreme Court reversed. *Id.* at 390–95. The Court held that the Fourth Amendment governed Graham's excessive force claim and that neither the Eighth nor the Fourteenth Amendments applied: "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.* at 394. It stated that "[b]ecause the Fourth Amendment provides an explicit

textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 395; *see also James v. York Cty. Police Dep't.*, 160 F. App'x 126, 132 n.3 (3d Cir. 2005). The Supreme Court added that "it is clear" that the Fourteenth Amendment's Due Process Clause protects a pretrial detainee from the excessive use of force, and the Eighth Amendment's prohibition against cruel and unusual punishment protects individuals post-conviction. *Graham*, 490 U.S. 395 n.10 (internal citations omitted).

Although the Third Circuit Court of Appeals has recognized that "[w]here a seizure ends and pre-trial detention begins is a difficult question," it is apparent based on decisions within this Circuit that McMillian was still in the process of being arrested at the time of his injury. In *United States v. Johnstone*, 107 F.3d 200, 205 (3d Cir. 1997), police officer Ronald Johnstone allegedly used excessive force in multiple separate incidents where he injured suspects while handcuffing them or shortly thereafter. The Third Circuit held that the Fourth Amendment's "objective reasonableness standard" applied to the excessive force claims even though Johnstone's conduct occurred after a "lawful restraint and arrest." *Id.* at 204. The court stated that "*Graham* shows that handcuffing is not necessarily the point at which a seizure ends for purposes of the application of the Fourth Amendment." *Id.* at 205. Rather, an arrest can continue after the suspect's freedom has been restrained: "a 'seizure' can be a process, a kind of continuum, and is not necessarily a discrete moment of initial restraint." *Id.* at 206–07. The Third Circuit held that the Fourth Amendment standard applied even in the case of an individual who Johnstone assaulted in the garage of the police station after transporting him from the scene of the incident giving rise to the arrest. *Id.* at 206. Although "[t]hat assault was the closest— both temporally and spatially—to pre-trial detention at the station house . . . . the assault in the

station house garage [ ] occurred during the course of [an] arrest." *Id.* (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (holding that a jury could find that police officers used excessive force in violation of the Fourth Amendment when removing the plaintiff from the police car at the police station)).

Here, McMillian has alleged that once he "was in handcuffs and against a police vehicle, [Douglas] then again began verbally assaulting [him]." (Am. Compl. ¶ 14.) At that point, Douglas grabbed McMillian's "right pinkie finger and bent the finger backwards until the tendon snapped." (*Id.* ¶ 15.) These allegations align with those in *Graham* and many of the incidents in *Johnstone*, where the injuries occurred while the officers were restraining a suspect shortly after placing him in handcuffs. Because the Fourth Amendment provides an "explicit textual source of protection," *Graham*, 490 U.S. at 395, it governs McMillian's excessive force claim.

## IV.

The absence of probable cause is a prerequisite for false arrest, false imprisonment and malicious prosecution claims under Pennsylvania state law. *See DiStegano v. Macy's Retail Holdings, Inc.*, 616 F. App'x 478, 480–81 (3d Cir. 2015) (citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (stating that the absence of probable cause is an element for Pennsylvania state law claims of false arrest, false imprisonment and malicious prosecution)). Probable cause exists when, "at the time of the arrest, the facts and circumstances within the officer's knowledge are 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

In *Santiago v. Hulmes*, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015), plaintiffs brought false arrest, false imprisonment and malicious prosecution claims against the police

officers who arrested them.  The basis for those claims rested on an allegation in the complaint that "[e]very accusation by the Police Officers . . . was false."  *Id.* (internal quotation marks omitted).  The court dismissed the claims because they consisted of a "naked assertion without further factual enhancement."  *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  The court specifically held that the complaint did "not affirmatively assert facts to show that the Officer Defendants did not have probable cause."  *Id*; *see also Wheeler v. Wheeler*, 2014 WL 4716731, at *3–4 (M.D. Pa. Sept. 22, 2014) (dismissing plaintiff's false arrest claim because, among other things, he "failed to plead facts suggesting that Defendant [ ] arrested Plaintiff without probable cause").

McMillian similarly fails to allege facts demonstrating that Douglas did not have probable cause to arrest him.  He summarily states that "[a]t no time during [Douglas's] interaction with [him] did he commit an offense against the laws of the Commonwealth of Pennsylvania."  (Am. Compl. ¶ 24.)  McMillian also alleges that "[a]t no time did [he] act in any manner to commit illegal acts or engage in conduct that justified the actions of . . . Douglas."  (*Id.* ¶ 25.)  Those allegations, however, are precisely the kind of conclusory statements that cannot survive a motion to dismiss.  *See Santiago*, 2015 WL 1422627, at *4 (stating that plaintiffs' "'bare bones' allegation of falsehoods and fabrications does not meet the applicable pleading standard") (citation omitted).  McMillian must instead allege facts, for example, "that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims," including the presence or absence of probable cause at the time of his arrest.  *Jenkins v. City of Phila.*, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23,

2015) (dismissing plaintiff's false arrest, false imprisonment and malicious prosecution claims).[2]

Further, even if the Court accepted as true McMillian's threadbare allegations that he had not committed any crime, they do not demonstrate that Douglas lacked probable cause to arrest him.  Whether McMillian committed a crime is not dispositive of whether Douglas had probable cause to arrest McMillan.  *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").  Rather, the relevant inquiry is whether the facts and circumstances available to Douglas are "sufficient to warrant a prudent man [to] believ[e] that the [suspect] had committed or was committing an offense." *Glasser*, 750 F.2d at 1206 (citations and internal quotation marks omitted).  Since McMillian has not alleged any facts which would allow the Court to determine the absence of probable cause, his state law claims are dismissed.

## V.

McMillan does not contest Douglas's motion to dismiss the official capacity claims and demand for injunctive relief.  (*See generally* Pl.'s Opp.)  An official capacity claim is "to be treated as a suit against the entity . . . . It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  McMillian's official capacity claims are dismissed because he has not alleged any facts to indicate that the municipality itself caused the constitutional violation at issue.  *See City of Canton, Ohio v.*

---

[2] In *Santiago*, *Jenkins* and *Wheeler*, the court dismissed false arrest, false imprisonment and/or malicious prosecution claims brought as Fourth Amendment violations pursuant to Section 1983.  The dismissal of those federal claims for failure to plead an absence of probable cause, however, is still applicable to McMillian's state law claims because the analysis of probable cause under Pennsylvania state law "is identical to that under federal law." *Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 579 (M.D. Pa. 2015) (citing *Renk*, 641 A.2d at 293).

*Harris*, 489 U.S. 378, 385 (1989). Further, McMillian's claims for injunctive relief are dismissed because he has not alleged facts which would indicate that he will be subjected to similar conduct in the future by Douglas. *See Hanna v. Grozier*, 2015 WL 2395479, at *2 (E.D. Pa. May 20, 2015) (collecting cases dismissing claims for injunctive relief because plaintiff failed to allege facts to demonstrate he would be subjected to future harm) ("Here, not only does Plaintiff fail to allege that he will have another encounter with Defendant Grozier or the South Whitehall Township Police Department, but he also fails to claim either that all South Whitehall Township police officers always violate the First Amendment rights of those they encounter or that South Whitehall Township authorized such conduct.").

## VI.

Leave to amend should be freely granted. FED. R. CIV. P. 15(a)(2). Leave to amend may be denied, however, if amendment would be futile. *See Walton v. Mental Health Ass'n. of Southeastern Pa.*, 168 F.3d 661, 665 (3d Cir. 1999). Douglas does not contest that McMillian should be given leave to amend. (Def.'s Mot. to Dismiss at 10.) Since McMillian's false arrest, false imprisonment and malicious prosecution claims are dismissed for failure to sufficiently plead, they are dismissed without prejudice and the Court grants him leave to amend. *See Santiago*, 2015 WL 1422627, at *6; *Jenkins*, 2015 WL 5585186, at *4. Since McMillan concedes that his request for injunctive relief and his Fourteenth Amendment and official capacity claims should be dismissed, they are dismissed with prejudice.

An appropriate Order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.